UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| WILLIE LIONEL KEYS AND CHERYL LYNETTE KEYS | CIVIL ACTION |
|---|---|
| VERSUS | NUMBER 12-49-FJP-SCR |
| DEAN MORRIS, LLP, COLDWELL BANKER MACKEY CO., KEY MORTGAGE SERVICES, INC., JAMIE CRANE, AND FAMILY ENTERPRISES, INC. | |

RULING

This matter is before the Court on the motion for summary judgment filed by Dean Morris, LLP.[1] Plaintiffs have opposed the motion.[2] For the reasons which follow, the Court finds that Dean Morris' motion for summary judgment should be denied.

I. Factual Background

Several years ago, Ester Keyes loaned Christola McKnight $31,900 over a four year time period, which was never repaid to Ester Keyes. After Ester Keyes' death, her succession obtained a

---

[1] Rec. Doc. No. 5 is Motion to Dismiss by Dean Morris. Because the parties submitted documents and evidence with the briefs submitted in connection with this motion, the Court converted the motion to dismiss to a motion for summary judgment and allowed the parties to supplement their briefs and evidence accordingly. Dean Morris filed a Supplemental Memorandum (Rec. Doc. No. 38), following the Court's order at Rec. Doc. No. 37.

[2] Rec. Doc. Nos. 13 & 39.

Doc#48018

stipulated judgment on January 19, 2006, against McKnight in the amount of the debt. This Judgment was properly recorded on July 27, 2007, in the official records of East Baton Rouge Parish, State of Louisiana. McKnight owned the property situated at 2424 Harding Boulevard, Baton Rouge, Louisiana by virtue of a Judgment of Possession filed in the Succession of Emerson McKnight, dated April 24, 1969. Following recordation of the stipulated judgment in favor of the Succession of Ester Keyes, a judicial mortgage attached to the property on Harding Boulevard.

McKnight executed a promissory note and mortgage, payable to GMAC Mortgage Corporation, upon which she defaulted causing GMAC, through Dean Morris, to move to foreclose on the Harding Boulevard property. Dean Morris represented to the court that a diligent search was made of the public records and all persons with an interest in the property were notified of the pending sheriff's sale.

The Harding Boulevard property was sold to GMAC at the East Baton Rouge Parish Sheriff's Sale on March 23, 2011. Plaintiffs Willie Lionel Keys and Cheryl Lynette Keys never received notice of any kind as to the pending sheriff's sale, which they contend would have afforded them an opportunity to defend their property interest. Following the sheriff's sale, the property was transferred to the Federal National Mortgage Association ("Fannie Mae") on May 24, 2011, over 60 days after the sheriff's sale and

during which time Dean Morris had control of the property. Fannie Mae then sold the property to Defendant Family Enterprises, Inc., whom Dean Morris also represented, on June 7, 2011.

Plaintiffs filed a Petition to Enforce Judicial Mortgage and to Recover Loss Sustained in state court on December 4, 2011, against the defendants listed above. Dean Morris removed this case to this Court on January 27, 2012 based on federal question jurisdiction under 28 U.S.C. § 1331. The Court denied Plaintiffs' Motion to Remand and this case is now before the Court on Dean Morris' motion for summary judgment.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] The Supreme Court has interpreted the plain language of Rule 56© to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[3]Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

trial."[4] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[5] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[6]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[7] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[8] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[5] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[6] *Id.* at 1075.

[7] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[8] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

Doc#48018     4

facts."[9] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[11]

### B. Parties' Contentions

Dean Morris contends that plaintiffs improperly attempt to impose liability on Dean Morris, the law firm representing GMAC, for its actions in the foreclosure proceedings. Dean Morris also contends that the law is clear that an attorney does not owe a duty to a non-client third party, and therefore it cannot be liable to plaintiffs in the absence of an intentional tort. Because plaintiffs have not alleged facts which would give rise to an intentional tort on the part of Dean Morris, Dean Morris argues plaintiffs have failed to state a cause of action against it.

Dean Morris also argues that to bring a civil rights claim against an attorney, plaintiffs must allege and prove that the attorney performed acts outside the scope of his representation of

---

[9]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[10]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Case 3:12-cv-00049-FJP-SCR   Document 46   02/20/13   Page 5 of 15

the client in order to impose liability.[12]

Plaintiffs have opposed both the original motion to dismiss and the converted motion for summary judgment, arguing that Dean Morris should be considered a state actor under 42 U.S.C. § 1983 as the attorney for GMAC. Plaintiffs contend that Dean Morris' focus on tort law is misplaced since it is liable as a state actor under the facts of this case. Plaintiffs also argue that Dean Morris' reliance upon a third party abstractor does not exempt Dean Morris from its liability under the Public Records Doctrine.

The Court now turns to a discussion of applicable jurisprudence.

### C. Applicable Jurisprudence

In *Doyle v. Landry*,[13] the Doyles had sued Gayle Schultz, her lawyer Mark Landry, and his law firm claiming damages for the premature invocation of a writ of fieri facias against the Doyle's property. The Doyles asserted a federal claim under 42 U.S.C. § 1983 based on the alleged unconstitutional application of a state statute in deprivation of their due process rights and a pendent state law claim for wrongful seizure.

Schultz had obtained a Texas judgment against Jerry Doyle during their divorce proceedings for his attempt to hide community

---

[12] Rec. Doc. No. 38, p. 4, citing *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

[13] 67 Fed. Appx. 241, 2003 WL 21108487 (5th Cir. April 21, 2003).

property assets by diverting funds to his parents' Louisiana bank accounts. Schultz hired Landry to enforce the Texas judgment against the Doyles in Louisiana. On March 9, 1998, Schultz obtained an order recognizing the Texas judgment, but Landry did not request the clerk send a copy of the Notice of Judgment to the Doyles or their counsel. Three days later, Landry requested a writ of fi fa from the clerk of court directing the sheriff to seize the Doyles' home.[14] The clerk of court issued the writ of fi fa on March 20, 1998. The sheriff went to the Doyle's home and served them with a Notice of Seizure which constructively seized the Doyles' home on March 30, 1998. Only at this time did the Doyles receive notice of the March 9 Order enforcing the Texas judgment in Louisiana. The Doyles' counsel promptly moved to recall the writ and enjoin the seizure and sale, and the Doyles were successful in obtaining a preliminary injunction enjoining the sale of their home.[15]

The Doyles then filed suit in federal court asserting their claims under 42 U.S.C. § 1983. During the jury trial, defendants moved for Judgment as a Matter of Law at the close of the Doyles' case, but the court denied the motion, finding that the attorneys involved were state actors because they were "engaged to do [the writ of fi fa] and are so imbued with the state regulatory process

---

[14] *Id.* at *1.

[15] *Id.* at *2.

that they become state actors."[16] A jury returned a verdict for the Doyles, and the defendants appealed.

On appeal, the defendants argued that the district court erred in finding them liable as state actors under Section 1983 for wrongfully seizing the Doyles' property because the Doyles were not deprived of property rights or the notice and opportunity to be heard. The Fifth Circuit squarely rejected this argument:

> As the Supreme Court held in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), private parties invoking a state attachment statute which results in the deprivation of a federal right, may be held liable under § 1983 if their actions are fairly attributable to the State. *Id.* at 936. The *Lugar* court established a two-part test to determine whether the deprivation of a party's right by a private actor may be fairly attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible;" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937.[17]

The Fifth Circuit found that the Doyles were clearly deprived of both their property rights and notice and opportunity to be heard since "[a] writ of fi fa under Louisiana law clearly interferes with an owners' property rights, regardless of whether the owner continues to live on the seized property."[18] The court also noted that, "'[A]t a minimum, [the due process clause]

---

[16] *Id.* at *2.

[17] *Id.* at *3.

[18] *Id.*, citing *DuBois v. Travelers Indem. Co.*, 261 So.2d 94, 96 (La. App. 3 Cir. 1972).

Doc#48018    8

require[s] that deprivation of life, liberty or property by adjudication be *preceded* by notice.'"[19] The court found that the Doyles were not afforded opportunity to be heard before seizure, and this resulted the deprivation of their rights.[20]

The Fifth Circuit also upheld the district court's finding that the defendants were state actors in their efforts to seize the Doyles' property:

> Second, a private party's joint participation with state officials in the seizure of disputed property based on that party's *ex parte* application is sufficient to characterize the party as a "state actor" for purposes of the Fourteenth Amendment. *Id.* at 941-42. As such, the Appellants were state actors because: (1) Schultz requested the writ of fi fa, which set into motion the procedures directly involving state officials that led to the constructive seizure of the Doyles' home, and (2) as Schultz's attorneys, Landry and Newman Mathis may be considered state actors because they employed that state to execute the writ of fi fa, a state-provided procedure. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.2d 1250, 1267 (3d Cir. 1994).[21]

The defendants also claimed the district court erred by denying their JMOL for Landry and Newman Mathis with regard to the wrongful seizure claim because an attorney cannot be held liable to a non-client unless the attorney knowingly violated a prohibitory statute.[22] The Fifth Circuit applied the holding in the Louisiana

---

[19] *Id.*, quoting *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 313 (1950)(emphasis added).

[20] *Id.*

[21] *Id.* at *4.

[22] *Id.* at *5.

Supreme Court's decision in *Penalber v. Blount*,[23] where it held that, "while an attorney may not be held liable to a non-client for malpractice or negligence because the attorney owed no duty to the non-client, an attorney could be held liable to a non-client for intentional tortious conduct."[24] Further, the Louisiana Supreme Court explained "that the 'intent' element of an intentional tort is not concerned with a desire to do any harm. 'Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although ... honestly believing that the act would not injure the plaintiff.'"[25]

The court found that "while Landry may have believed his interpretation of the law was correct, he intended to seize the Doyles' property and took measures to ensure that they were not apprised of the issuance of the writ before the sheriff seized their property."[26] Thus, the court found that Landry "intentionally took measures to bring about a result which invaded the Doyles' interests in a way that the law forbids."[27]

---

[23] 550 So.2d 577 (La. 1989).

[24] *Doyle*, at *5, citing *Penalber*, 550 So.2d at 582.

[25] *Id.*, quoting *Penalber*, 550 So.2d at 582 (citations omitted).

[26] *Id.*

[27] *Id.*

Doc#48018                           10

Case 3:12-cv-00049-FJP-SCR   Document 46   02/20/13   Page 10 of 15

Plaintiffs also rely upon *Bank of New York Mellon v. Smith*[28] in support of their position. In *Bank of New York Mellon*, plaintiff Smith had alleged that Chase, Saxon, and Dean Morris were solidarily liable, and state actors for the purpose of 42 U.S.C. § 1983, in that they had wrongfully used the executory process and "the powers and authorities of the State of Louisiana" to seize her home.[29] Smith claimed these actions deprived her of a "pre-deprivation hearing."[30]

The Louisiana appellate court relied heavily on the reasoning and discussion as set forth above in *Doyle* in reaching its decision in *Bank of New York Mellon*. The court recognized that, "[u]nder *Doyle*, an attorney may be a state actor along with his client, the seizing creditor, if he employs the state to enforce or execute a state-provided procedure."[31] The court acknowledged that, although Louisiana's executory process itself was held to be constitutional,

> [E]ven where the Louisiana procedure for issuing and executing a seizure is constitutional as written, misapplication of the due process protections provided in the statute can give rise to a section 1983 claim. *See Doyle*, 97 F. Supp.2d 763. A private party who sets an attachment scheme in motion is considered a state actor if the plaintiff challenges the constitutionality of the

---

[28] 71 So.3d 1034, 2011-60 (La. App. 3 Cir. 6/29/11).

[29] *Id.* at 1039.

[30] *Id.* at 1041.

[31] *Id.* at 1042. (*See also Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994); and *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993).

Case 3:12-cv-00049-FJP-SCR   Document 46   02/20/13   Page 11 of 15

procedure. *See Id.*[32]

After further analysis, the Louisiana appellate court held that, [i]n summary, Chase and its attorney Dean Morris, caused a seizure by the sheriff, and there is a final judgment indicating that the seizure was unlawful. Smith has asserted damages as a result of that seizure."[33] The court further stated, "Smith asserts that Chase and Dean Morris are state actors under section 1983, along with specific supporting facts. We are not deciding the merits. We find that Smith asserted sufficient facts to state a cause of action against Chase and Dean Morris, and against Mellon, as successor to Chase, for 42 U.S.C. 1983 violations of due process in causing the constructive seizure through executory process."[34]

Applying the applicable jurisprudence to the facts of this case, the Court denies Dean Morris' motion for summary judgment for the same reasons set forth by the *Mellon* court. GMAC, through its attorney Dean Morris, caused the seizure and sale of the property at issue in this case. Clearly, the seizure and sale occurred without the required notice to plaintiffs. As in *Mellon*, there are sufficient facts in the record to find that Dean Morris was a state actor under 42 U.S.C. § 1983 and that it violated plaintiffs' due process rights, intentionally or otherwise. While there is not

---

[32] *Id.*

[33] *Id.* at 1044.

[34] *Id.* at 1045.

Case 3:12-cv-00049-FJP-SCR   Document 46   02/20/13   Page 12 of 15

evidence of intentionally torious conduct on the part of Dean Morris, there is evidence that Dean Morris intentionally took measures which resulted in an invasion of the plaintiffs' property interests. Under Louisiana law, this is enough to create a genuine issue of material fact such that summary judgment is not proper under the facts of this case. Furthermore, just as the court stated in *Mellon*, the Court is not deciding the case on the merits but simply allowing plaintiffs to pursue their claims at trial.

### D. Alternative Arguments on Notice & Standing

Dean Morris has argued in the alternative that, should the Court find Dean Morris could be liable to plaintiffs under Section 1983, the case should nevertheless be dismissed because Dean Morris complied with the notice standard required by *Mennonite Board of Missions v. Adams*.[35] The United States Supreme Court held in *Mennonite* that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of any party, whether unlettered or well-versed in commercial practice, it ifs name and address are reasonably ascertainable."[36] Dean Morris contends *Mennonite* only requires "reasonably diligent efforts" to identify and provide notice to parties having an interest in the subject property, which requires

---

[35] 462 U.S.C 791 (1983).

[36] *Id.* at 800.

no more than a routine search of the mortgage records.

However, Dean Morris acknowledges that the judicial mortgage (stipulated judgment) in favor of the plaintiffs was recorded in the mortgage records of East Baton Rouge Parish on July 27, 2007, at Original 893, Bundle 11977.[37] Dean Morris then states that three searches of the mortgage records were taken, but this judgment was never found. There is, at the very least, a genuine issue of material fact as to whether Dean Morris satisfied the notice standards set forth in *Mennonite*. Therefore, Dean Morris would not be alternatively entitled to summary judgment on this issue.

Dean Morris also argues in the alternative that plaintiffs lack standing because "damages are nonexistent."[38] Dean Morris contends that plaintiffs have not suffered monetary damages because there was no equity in the property. Based on the Court's findings as set forth above, the Court believes this is an argument Dean Morris may make at trial, but not one which supports a summary judgment.

### III. Conclusion

For the reasons set forth above:

The motion to dismiss, converted to a motion for summary

---

[37]Rec. Doc. No. 38, pp. 3-4.

[38]Rec. Doc. No. 38, p.8.

Doc#48018          14

judgment[39] by Dean Morris is denied.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 19th day of February, 2013.

```
_____
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA
JAMES J. BRADY
For Judge F.J. POLOZOLA
```

---

[39]Rec. Doc. No. 38.

Doc#48018                    15